UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | 6:22-cr-00262-MC |
| v. | INFORMATION |
| MICHAEL MALEKZADEH and BETHANY MOCKERMAN, | 18 U.S.C. § 1343<br>18 U.S.C. § 1349<br>18 U.S.C. § 1957 |
| Defendants. | Forfeiture Allegations |

THE UNITED STATES ATTORNEY CHARGES:

INTRODUCTORY ALLEGATIONS

At all relevant times:

1. Zadeh Kicks LLC was an Oregon Limited Liability Company incorporated in 2013 and owned and operated by **MICHAEL MALEKZADEH.**

2. **BETHANY MOCKERMAN** held herself out as the Chief Financial Officer of Zadeh Kicks LLC.

3. The Victim Financial Institutions referenced herein are financial institutions within the meaning of Title 18, United States Code, Section 20.

Information                                                                                           Page 1
                                                                                     Revised April 2018

## COUNT 1
## (Wire Fraud)
## (18 U.S.C. § 1343)

4. Paragraphs 1 through 3 of the Introductory Allegations are incorporated here.

5. Beginning in or about January 2020 and continuing through in or about April 2022, in the District of Oregon, defendant **MICHAEL MALEKZADEH** did knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### SCHEME AND ARTIFICE TO DEFRAUD

6. As part of the scheme and artifice to defraud, defendant engaged in the following activity to carry out the scheme and artifice to defraud.

7. **MALEKZADEH** and Zadeh Kicks LLC established a nationwide customer base by selling online limited edition and collectable sneakers. **MALEKZADEH** initially purchased sneakers and sold his inventory. Beginning in or around 2019, **MALEKZADEH** began advertising, selling, and collecting payments for the purchase of sneakers before their public release dates, known as preorders. He would price the preorders at near or below MSRP to drive up the number of orders received. Customers would pay for the sneakers via PayPal or wire transfer prior to their release date.

8. After receiving the payments, **MALEKZADEH** did not have the ability to purchase the sneakers for less than the price at which he presold the sneakers. Instead, he purchased sneakers from other third-party vendors for at or above retail price. In other words, **MALEKZADEH** collected money for preorder sales from victim customers knowing that actually fulfilling the orders would be financially ruinous.

9. By or near the Fall of 2020, **MALEKZADEH** began advertising, selling, and collecting payments from victims for preorder sneakers knowing he could not satisfy all orders placed.

10. Instead of completely refunding his customers for undelivered sneakers, **MALEKZADEH** offered a combination of refunds and gift cards to those who did not receive sneakers. He would offer to "buy back" the sneakers from the customers at a premium, offering cash and gift cards in excess of the amounts paid by his customers for the sneakers. By offering gift cards in the buyback scheme, **MALEKZADEH** was able to keep more of the cash profits from the fraud.

11. **MALEKZADEH** also delayed sending sneakers, sometimes for up to a year, and left numerous orders unfulfilled without providing a refund or gift card.

12. As an example of one particular sneaker, in or around the Fall of 2021, **MALEKZADEH** began selling preorders of Nike Air Jordan 11 Cool Grey sneakers. He priced presale orders at approximately $115-200 a pair, while retail price expected to be set at $225 when the sneakers were released in December 2021.

13. Zadeh Kicks received and accepted preorder sales for over 600,000 pairs of sneakers, resulting in payments to **MALEKZADEH** of over $70 million. **MALEKZADEH** had no way of acquiring the quantity needed to fill the number of preorders.

14. While he accepted payment for over 600,000 preorders of the Nike Air Jordan 11 Cool Grey sneakers, **MALEKZADEH** acquired just over 6,000. Customers were either left with unfulfilled orders, they received a refund, or they received a combination of refund and a gift card.

15. By April 2022, **MALEKZADEH** and Zadeh Kicks LLC owed customers over $70 million for undelivered sneakers, with additional millions held by customers in worthless gift cards.

16. **MALEKZADEH** spent the proceeds from the preorders on luxury goods, including several million dollars on high-end automobiles from Bentley, Ferrari, Lamborghini, Porsche, and Mercedes, over $3 million paid to Louis Vuitton for luxury bags, purses and other items, a large quantity of jewelry, several furs, and millions of dollars in watches ranging in value from a few thousand dollars to over $600,000.

## WIRE COMMUNICATION

17. On or about January 10, 2022 in the District of Oregon, Defendant **MICHAEL MALEKZADEH**, having devised and intended to devise the material scheme to defraud described herein, and for the purpose of executing or attempting to execute the above-described material scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowingly transmitted and caused to be transmitted by means of wire communications in interstate and foreign commerce certain sounds, signals, and writings, either sent from or received within the District of Oregon, to wit, the initiation of an electronic funds transfer of $2,400,000 from PayPal to Zadeh Kicks LLC's bank account in Oregon,

In violation of Title 18, United States Code, Section 1343.

/ / /

/ / /

/ / /

/ / /

## COUNT 2
### (Conspiracy to Commit Bank Fraud)
### (18 U.S.C. § 1349)

18. Paragraphs 1 through 3 of the Introductory Allegations are incorporated here.

19. Beginning no later than 2013 and continuing through in or about March 2022, defendants **MICHAEL MALEKZADEH** and **BETHANY MOCKERMAN** did knowingly conspire and agree with each other to violate Title 18, United States Code, Section 1344, that is, to execute a scheme and artifice to defraud Victim Financial Institutions and to obtain money, funds, assets and other property owned by, and under the custody and control of, the Victim Financial Institutions by means of materially false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS SCHEME AND ARTIFICE TO DEFRAUD

20. Paragraphs 6 through 18 are incorporated here.

21. In order to purchase sneakers and run operations at Zadeh Kicks LLC, **MALEKZADEH** and **MOCKERMAN** applied for numerous loans at Victim Financial Institutions.

22. As part of those applications for loans, **MALEKZADEH** and **BETHANY MOCKERMAN** provided altered and false financial information from Zadeh Kicks LLC. The false information included altered bank statements that removed reference to other loans Zadeh Kicks LLC received.

23. These false financial statements and altered bank records were provided to the Victim Financial Institutions for the purpose of influencing their decision to loan money to the business.

24. In total, defendants submitted over 15 fraudulent loan applications, all of which contained false and altered financial information. Defendants received well over $15 million in loan funds from these applications.

In violation of Title 18, United States Code, Section 1349.

## COUNT 3
## (Money Laundering)
## (18 U.S.C. § 1957)

25. Paragraphs 1 through 24 are incorporated herein.

26. On or about June 7, 2021, in the District of Oregon, Defendant **MICHAEL MALEKZADEH** knowingly engaged in and attempted to engage in a monetary transaction, by, through, and to a financial institution, in and affecting interstate commerce, in criminally derived property that was of a value greater than $10,000, to wit: a $790,000 transfer sent from Zadeh Kicks LLC's business bank account to **MALEKZADEH'S** personal bank account for the purchase of a $420,000 watch and a $79,000 automobile, such property having been derived from a specified unlawful activity, that is, wire fraud,

In violation of Title 18, United States Code, Section 1957.

## FIRST FORFEITURE ALLEGATION
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

Upon conviction of the offense alleged in Counts 1 and 2 of this Information, defendants **MICHAEL MALEKZADEH** and **BETHANY MOCKERMAN** shall forfeit to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(2)(A), and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses, including but not limited to a money judgment for a sum of money equal to the amount of property involved in or derived from that offense.

If the above-described forfeitable property, as a result of any act or omission of defendants:

    (a)   cannot be located upon the exercise of due diligence;

    (b)   has been transferred or sold to, or deposited with, a third party;

    (c)   has been placed beyond the jurisdiction of the court;

    (d)   has been substantially diminished in value; or

    (e)   has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

## SECOND FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

Upon conviction of the offense alleged in Count 3 of this Information, defendant **MICHAEL MALEKZADEH** shall forfeit to the United States pursuant to 18 U.S.C. § 982(a)(1), any and all property, real or personal, involved in the money laundering offenses and all property traceable to such property, including but not limited to a money judgment for a sum of money equal to the amount of property involved in those offenses.

If the above-described forfeitable property, as a result of any act or omission of defendant:

    (a)  cannot be located upon the exercise of due diligence;

    (b)  has been transferred or sold to, or deposited with, a third party;

    (c)  has been placed beyond the jurisdiction of the court;

    (d)  has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b).

Dated: July 29, 2022         Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

*/s/ Gavin W. Bruce*
GAVIN W. BRUCE, OSB #113384
Assistant United States Attorney

*/s/ Quinn P. Harrington*
QUINN P. HARRINGTON, OSB #083544
Assistant United States Attorney